IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES PERKINS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| POLICE OFFICERS JOHN DOE 1 | : | No. 14-06942 |
| THROUGH 10 AND POLICE | : | |
| OFFICER EDWARD ROSEN, | : | |
| | : | |
| Defendants. | | |

**MEMORANDUM OPINION**

**Timothy R. Rice**  October 29, 2015
**U.S. Magistrate Judge**

    Plaintiff James Perkins alleges Defendants, Police Officer Edward Rosen and Correctional Officers Doe 1-10, employees of Marple Township, arrested him without probable cause and used excessive force in violation of 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and corresponding provisions of the Pennsylvania Constitution.[1]  Second Am. Compl. (doc. 21) ¶ 1, 58, 70.  He also alleges liability under state law for assault and battery, false arrest, false imprisonment, and civil conspiracy.  Id. ¶¶ 89, 94, 98, 102.

    Defendants seek summary judgment on all of Perkins's claims because he has failed to identify the John Doe Defendants, and there is no evidence Officer Rosen was personally involved in Perkins's arrest.  Defs.' Mot. Summ. J. (doc. 38) at 3-4.  I grant Defendants' motion on the claims against the John Doe Defendants and the excessive force, assault and battery, and

---

[1]    Perkins also sued Marple Township, Marple Township Police Department, and the County of Delaware.  See Complaint (doc. 1).  On May 4, 2015, Delaware County was dismissed.  See 5/4/15 Order (doc. 24).  On June 19, 2015, Marple Township and Marple Township Police Department were dismissed.  See 6/19/15 Order (doc. 31).

conspiracy claims against Officer Rosen.  However, I deny Defendants' motion on the unlawful arrest claim under federal law, and the false arrest and false imprisonment claims under state law.

I.  Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law."  Id.

Where there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party.  See id. at 250.  "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed."  Id. at 250-51.  I must view the facts and any inferences from those facts in the light most favorable to the non-moving party.  See Ray v. Warren, 626 F.3d 170, 173 (3d Cir. 2010).

II.  Background

The following facts are viewed in the light most favorable to Perkins.  Between July 30 and December 5, 2012, Officer Rosen, acting undercover, purchased heroin on several occasions from Kevin Pace and two other men.  Rosen Dep. at 18-38.  On December 6, Rosen planned to arrest Pace during a narcotics sale at the Wawa Food Market.  Id. at 39-40.  Rosen assembled and briefed an arrest team of Marple Township police officers and members of the Delaware County Drug Task Force.  Id. at 12-13, 39, 46-49.  While another officer, Lieutenant Boudwin,

managed the arrest team outside the Wawa, Rosen entered the store, called Pace, and asked to meet in the store.   Id. at 41-42.

Before arriving at the Wawa, Pace had picked up his father, Perkins.   Perkins Dep. at 32. There were two other men in the vehicle.   Id.   Pace told Perkins he had to make a stop.   Id. at 33.   While on the phone with Rosen, Pace parked in the Wawa parking lot and walked toward the store.   Id.; Rosen Dep. at 41-42.   Police tackled Pace and handcuffed him.   Perkins Dep. at 33-34.

Police ordered Perkins out of the car at gunpoint, forced him to the ground, and handcuffed him.   Id. at 34, 57.   An unidentified officer asked him if he had any drugs or weapons, and if he had identification.   Id.   Perkins told the officer he had identification in his back pocket, and the officer reached into his pocket.   Id.   During this time, another unidentified officer kneed Perkins in the back, breaking a rib.   Id. at 58-59, 65-66.

Officer Rosen left the Wawa and identified Pace, who was approximately 15 feet from where Perkins was detained next to Pace's vehicle.   Rosen Dep. at 44-46.   Rosen admits he had the authority to arrest or release Perkins at the scene.   Id. at 91.   Perkins was taken to the Marple Township police station where he remained for several hours.   Rosen Dep. at 61-63; Perkins Dep. at 73-75.   At the station, police took his identification card, ran it, returned it, and told him to leave.   Perkins Dep. at 60, 73, 76-77.

II.   Discussion

   A.   John Doe Defendants

The "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified."   Blakeslee v. Clinton Cty., 336 F. App'x

3

248, 250 (3d Cir. 2009). "If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." Id.

Perkins filed his Complaint against "John Doe 1 through 10," police officers believed to be employees of Marple Township, the Marple Township Police Department, and/or the county drug task force. See Second Am. Compl. ¶¶ 8-9. Although discovery ended in August, see 7/16/15 Order (doc. 36), Perkins has yet to identify the John Doe defendants. Defendants contend the John Does must be dismissed due to this failure.[2]

Perkins failed to respond to Defendants' argument regarding the John Does. See Pl.'s Resp. (doc. 40). Perkins also had ample opportunity during discovery to obtain the names of the other officers who participated in his arrest. During Officer Rosen's deposition, Perkins's

---

[2] Defendants argue that naming the John Doe Defendants at this time would cause undue delay of the trial and prejudice. Defs.' Mot. Summ. J. at 3-4. They further note the statute of limitations on the causes of action expired on December 6, 2014, two years after the alleged incident. Id. at 4; see also Wallace v. Kato, 549 U.S. 384, 387 (2007) (federal courts look to state law to determine the limitations period for § 1983 actions); Jenkins v. City of Philadelphia, No. 15-3271, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23, 2015) (two-year statute of limitations for intentional torts such as false arrest and imprisonment in Pennsylvania).

Although Defendants also contend Perkins should not be granted leave to amend his complaint, Perkins does not seek leave to amend. Thus "it is not necessary to determine whether such an amendment would fall within the statute of limitations by relating back under Fed. R. Civ. P. 15(c)." Flythe v. Solomon and Strauss, LLC, No. 09-6120, 2011 WL 2314391, at *2 n.3 (E.D. Pa. June 8, 2011).

A party seeking to amend his complaint more than 21 days after a responsive pleading has been filed may do so "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Leave to amend is futile if the proposed amendments are barred by the statutes of limitation. See Garvin v. City of Philadelphia, 354 F.3d 215, 222 (3d Cir. 2003). Amendments that replace "John Doe" defendants with actual defendants, however, may relate back if Rule 15 conditions are satisfied. Discussion of whether such conditions are met is unnecessary, however, because Perkins has failed to name the John Does, and has not sought an opportunity to do so.

attorney thoroughly questioned Rosen about the number of officers involved in the incident, and Officer Rosen identified other officers, including Lieutenant Boudwin, who "was the highest ranking person there" and who "had [Perkins] transported back [to the police station]." Rosen Dep. at 41, 45-46. He also named Tim Bernhardt, an Upper Darby officer, who had Pace in custody when Rosen exited the Wawa, and Eric Miller, the officer in charge at the station when Perkins was detained. Id. at 44, 88-89.

The supplemental police report, written by Lieutenant Boudwin, also identifies the officers involved in the December 6, 2012 "operation," including "Lt. Mike Boudwin, Det. Mike Honicker, Det. Chris Sponaugle, Det John Newell, Det. Sean Hannigan, Det. Tim Bernhardt, Det. Bill McGoldrick, Det. Christine McAleer and Det. John News." 12/6/12 Supp. Report at 1, Ex. "G" to Defs.' Resp. to Pl.'s Statement of Material Facts ("Supp. Report"). Perkins never attempted to depose those officers or add them as defendants.

The John Doe Defendants are dismissed.

    B.        Unlawful Arrest Charges Against Officer Rosen

            1.        Arrest Without Probable Cause Under § 1983

Defendants argue Perkins's unlawful arrest claims against Officer Rosen should be dismissed because he had no personal involvement in Perkins's arrest and subsequent detention. Defs.' Mot. Summ. J. at 4.

Section 1983 provides a civil remedy for the violation of a constitutional right, privilege, or immunity by any person acting under color of state law. To establish liability, however, a defendant must have personal involvement in the alleged wrongdoing, and cannot be held liable solely through operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d

5

Cir. 1988).   Personal involvement includes "personal direction" or "actual knowledge and acquiescence," and such allegations "must be made with appropriate particularity."   Id.   A "plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the defendant's actions and the specific deprivation of constitutional rights at issue."   Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990)).

Perkins claims Rosen was the lead and only investigator "with respect to the police action at issue."   Pl.'s Resp. at 8.   He asserts Rosen assembled the arrest team and debriefed the officers before the arrests took place.   Id.   He also contends Rosen admitted Perkins "should have been released in Wawa's parking lot and never taken to [Marple Township Police Department] headquarters."   Id.

Rosen initially gathered and briefed the arrest team, and provided instruction.   Rosen Dep. at 12-13, 39, 41 ("the decision was made and I said if they take off in the car to let them go").   Lieutenant Boudwin, however, supervised the arrest team outside of the Wawa, while Rosen was inside on the phone with Pace.   Id. at 41 ("Lieutenant Boudwin was the highest ranking person there.   So he positioned cars around the parking lot.   My role as the undercover was to separate the driver from the vehicle, if possible."); id. at 49 (Lieutenant Boudwin was the ranking supervisor who "organize[d] the tactics of how [Pace] was going to be arrested"); Supp. Report at 1 ("Boudwin had officers posted at various locations on the Wawa lot.").   During that time, other officers also physically detained Perkins.   See Supp. Report at 2 ("Boudwin advised all the officers involved to move in and secure the black male who had just exited the target vehicle and most importantly the target vehicle. . . . Boudwin and Honicker secured the rear seat driver's side passenger, James Perkins . . . ."); see also Rosen Dep. at 42-43 ("[T]raditionally the

undercover doesn't get involved in the arrest. So I stayed in the bathroom. . . . [W]hen I came out everyone was already in custody and I could hear on radio everything was secured."); Rosen Dep. at 85; Pl.'s Resp. at 5 ("Officer Rosen exited the Wawa and identified Pace . . . . At that point, Officer Rosen was about 15 feet away from the spot where plaintiff was detained by other members of the arrest team."). The officers then advised Perkins and the others that they would be taken to the Marple police station. See Supp. Report at 2 ("All were advised that they would be taken back to Marple PD to be identified and checked for any outstanding warrants.").

Although Officer Rosen was not in charge of the logistics outside of the Wawa or involved in Perkins's initial apprehension, he admitted he possessed decision-making authority to arrest or release Perkins in the Wawa parking lot. Rosen testified he believed Perkins did not have identification, which is why he was detained.[3] See Rosen Dep. at 44. However, when Perkins's attorney asked, "[I]f Mr. Perkins had valid ID at the Wawa parking lot, would there be any reason to bring him to Marple Township Police Department that night?" Rosen replied, "No . . . So that night they didn't have, to my knowledge, any [drugs]. So he would have been probably – it would have been my call, so I would have released him on the scene if he had valid identification on him." Id. at 91. This admission, combined with Perkins's claim that he had produced identification, creates a jury issue whether Rosen violated Perkins's constitutional rights.

Furthermore, when questioned about police protocol where detainees have identification and no warrants, Rosen stated, "[H]ad they had [identification] and had the police car, the

---

[3] A person possibly connected to a crime and without identification may be held to establish his identity. See Hiibel v. Sixth Judicial Dist. Ct of Nevada, 542 U.S. 177, 188 (2004) (officer may arrest suspect during Terry stop for failure to identify himself if the request for identification is reasonably related to the circumstances justifying the stop).

7

marked car was there with computer equipment in order to run them, if they had no . . . warrants they would have been released because [he did not recall Perkins being involved in any of his drug transactions with Pace]." Id. at 53.

Other evidence also could support a jury finding that Rosen acquiesced in Perkins's arrest. Rosen was responsible for deciding whether to charge Perkins with a criminal offense, and whether to release him from custody later that evening. Id. at 59, 66, 85. Perkins asserts Rosen directed marked Marple Township police vehicles to transport him to the police station. Pl.'s Resp. at 5 (citing Rosen Dep. at 43). Rosen testified that he directed a marked police car to transport Pace, and followed this car back to the station; he did not know how the marked car for the other arrestees was summoned, and did not transport the other men to the station. See Rosen Dep. at 43, 47; see also Supp. Report at 2 ("Honicker and Boudwin transported Perkins and Bentley. . . . All four were placed in the holding cell for further identification. . . . The suspects were then processed by officers from the Marple Twp. Police Department."). Perkins, however, testified that he rode in the same police car as Pace. Perkins Dep. at 67. This is a disputed issue of material fact that supports Perkins's claim.

Viewed in the light most favorable to Perkins, a reasonable jury could find that Perkins was not involved in illegal activity, cooperated with the police, produced his state identification card to the arresting officer, and was arrested without probable cause. See Perkins Dep. at 34; Rosen Dep. at 53-59. Although Rosen's role as lead investigator fails to establish liability on its own, see DeBellis v. Kulp, 166 F. Supp. 2d 255, 277 (E.D. Pa. 2001) (granting summary judgment where police chief was not sufficiently involved in arrest or use of force), the fact that

he was responsible for deciding whether to arrest Perkins and that he would have released Perkins if he had had identification precludes summary judgment.  See Hedges, 240 F.3d at 121.

Even if a constitutional violation is found, Defendants assert Officer Rosen is entitled to qualified immunity.  See Defs.' Mot. Summ. J. at 6.  Qualified immunity protects government officials from being sued for civil rights violations.  See Gomez v. Toledo, 446 U.S. 635, 639 (1980).  It not only shields officials from liability, but also protects them from the costs, risks, and concerns associated with being subject to trial.  See Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982).  The issue of immunity, therefore, should be resolved early in the litigation if possible.  Pearson v. Callahan, 555 U.S. 223, 232 (2009).

I must consider whether: (1) the facts, taken in a light most favorable to the plaintiff, demonstrate a violation of a constitutional or statutory right; and (2) that right was "clearly established" at the time of the official's alleged misconduct.  Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Qualified immunity applies unless "the official's conduct violated a clearly established constitutional right," meaning it would be clear to a reasonable officer that his conduct was unlawful.  Pearson, 555 U.S. at 232; see also Saucier, 533 U.S. at 202.

Perkins has alleged sufficient facts to show that Rosen violated his Fourth Amendment right to be free from unlawful arrest.  Further, based on the facts alleged by Perkins, it would have been clear to a reasonable police officer that Rosen's conduct was prohibited.  See United States v. Sharpe, 470 U.S. 675, 686 (1985) (length of detention must be justified by police need to confirm or dispel their suspicions); see also Hiibel, 542 U.S. at 188.  Perkins was not involved in any illegal activity and a jury could conclude he produced identification to the officers who nonetheless arrested him.  A reasonable officer would know it was unlawful to

9

further detain Perkins in that circumstance, as Rosen himself admits.  See Rosen Dep. at 91.

Officer Rosen is not immune from liability.

A material issue of fact whether Perkins provided the police his identification card outside of the Wawa exists.   Because Rosen admitted his decision-making authority to release Perkins, a material issue of fact also exists whether Rosen had actual knowledge of, and acquiesced in, Perkins's arrest. See Rode, 845 F.2d at 1207.   Therefore, I deny summary judgment on Perkins's claim of unlawful arrest.   Anderson, 477 U.S. at 250.

        2.       False Arrest and False Imprisonment

State employees are generally immune from liability unless their conduct constituted "a crime, actual fraud, actual malice or willful misconduct."   42 Pa. C.S. § 8550.   In police misconduct cases, a court must find "not only that the officer committed the acts in question, but that he willfully went beyond the bounds of the law."   DeBellis, 166 F. Supp. 2d at 279 (citing Renk v. City of Pittsburgh, 641 A.2d 289 (Pa. 1994)).   "Therefore, an officer may be liable for false imprisonment and false arrest only if it is found both that there was no probable cause to make the arrest and that the officer knew that there was no probable cause . . . ."   DeBellis, 166 F. Supp. 2d at 279.

Perkins argues Officer Rosen is liable for false arrest and false imprisonment[4] because Rosen "admits that plaintiff was taken [into] police custody and held for hours [without] probable cause to detain plaintiff."   Pl.'s Resp. at 9.   Rosen admits only that Perkins should

---

[4]    In Pennsylvania, a "false arrest is defined as 1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so."   DeBellis, 166 F. Supp. 2d at 279-80 (internal quotation marks omitted).   "[T]he elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention."   Id. at 280 (citing Renk, 641 A.2d at 293). An arrest is lawful if it is based upon probable cause.   Id.

10

have been released at the Wawa if he had proper identification, but that Perkins was lawfully detained for identification purposes. See Rosen Dep. at 52, 91. Nevertheless, because it is disputed whether Perkins gave his identification to the arresting officer, and whether Rosen acquiesced in Perkins's allegedly false arrest, a jury could find Rosen willfully violated state law. Therefore, I deny summary judgment on these claims.

    C.    Excessive Force and Assault and Battery

        1.    Excessive Use of Force

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and it was unreasonable." Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003) (quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999)). The reasonableness standard "requires a highly fact-specific inquiry into the circumstances of each particular case," Hammock v. Borough of Upper Darby, No. 06-CV-1006, 2007 WL 3232115, at *4 (E.D. Pa. Oct. 31, 2007), and asks whether the officers' actions are "objectively reasonable in light of the facts and circumstances confronting them." Graham v. Connor, 490 U.S. 386, 397 (1989); see also Hammock, 2007 WL 3232115, at *4. An officer may be directly liable for excessive force even without physical contact if he "'fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence . . . provided he had a 'realistic and reasonable opportunity' to intervene.'" Hammock, 2007 WL 3232115, at *5 (quoting Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002)); see also Smith, 293 F.3d at 651 ("[t]he approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force").

Because the parties agree that Officer Rosen never physically touched Perkins, and was inside the Wawa during Perkins's apprehension, see Defs.' Mot. Summ J. at 7; Pl.'s Resp. at 4-5, it is not necessary for a jury to reach a reasonableness determination regarding Rosen's alleged use of force. Rosen could not have knowingly acquiesced in any use of force, nor could he be liable for failing to intervene. See Smith, 293 F.3d at 651; Hammock, 2007 WL 3232115, at *5. Accordingly, I grant summary judgment on this claim.[5]

2. Assault and Battery

Perkins asserts Rosen is liable for assault and battery[6] because he was kneed in the back twice while being held on the ground by an officer. Second Am. Compl. ¶ 31, 89. In police misconduct cases, an officer may be liable for assault and battery "if it is shown not just that he acted intentionally, but also that the officer knew that the force used was not reasonable under the circumstances." DeBellis, 166 F. Supp. 2d at 279. Officer Rosen, however, had no involvement in the alleged use of force, and Perkins offers no evidence that Rosen was aware of the alleged use of excessive force. Thus, Rosen's actions cannot constitute willful misconduct. See id. Summary judgment on this claim is granted.

---

[5] Even if a constitutional violation of excessive force is found, Defendants argue that Rosen is entitled to qualified immunity. Defs.' Mot. Summ. J. at 6-8. Because Perkins has failed to produce evidence that shows Rosen's involvement in the alleged use of force, I need not address qualified immunity with respect to this claim.

[6] "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk, 641 A.2d at 293 (quoting Cohen v. Lit Brothers, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)).

D. Conspiracy

Perkins alleges no facts establishing a conspiracy. He generally alleges that Officer Rosen and the other officers "acted with the common purpose to do the unlawful act of violating plaintiff's constitutional rights" and "committed a number of overt acts . . . all in pursuance of their common purpose. . . ."[7] Second Am. Compl. ¶ 102-03. He also argues that, "Officer Rosen and the arrest team that he arranged for, and personally selected, combined to commit a series of acts against plaintiff which were unlawful." Pl.'s Resp. at 8. These conclusory allegations of conspiracy are insufficient to survive summary judgment.

Although a jury could conclude Rosen allowed Perkins to be arrested even after he produced identification, there are insufficient facts to establish an agreement, implicit or explicit, by Rosen and the other officers to violate Perkins's constitutional rights. See Tender Touch Rehab Servs., LLC, 26 F. Supp. at 402; see also Lawson v. City of Coatesville, 42 F. Supp. 3d 664, 685 (E.D. Pa. 2014) (granting summary judgment on conspiracy claim where "any circumstantial evidence that [the two arresting officers] acted in accordance with an agreement does not raise more than a mere suspicion of concerted action toward the alleged common objective of arresting [plaintiff] without probable cause" (internal quotation marks omitted)); Coleman v. Cerski, No. 3:04-cv-1423, 2007 WL 2908266 at *4 (M.D. Pa Oct. 4, 2007) (in deciding a motion for summary judgment, a court does not need to accept "mere conclusory

---

[7] To establish a civil conspiracy claim pursuant to Pennsylvania law, a plaintiff must establish: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Tender Touch Rehab Servs., LLC v. Brighten at Bryn Mawr, 26 F. Supp. 3d 376, 402 (E.D. Pa. 2014) (citing Woodward v. ViroPharma Inc., No. 3222 EDA 2011, 2013 WL 1485110, at *11 (Pa. Super. Ct. Apr. 3, 2013).

13

allegations" and instead must "determine whether there is a genuine issue for trial"). This claim is dismissed.

An appropriate Order follows.